Good morning. May it please the Court, Counsel. My name is Paul Smith for the appellate superintendent in this habeas corpus case. With the Court's permission, I would like to reserve five minutes of my time for rebuttal. Watch the clock, please. This case is a superintendent's appeal from the district court's grant of habeas corpus relief on petitioner's freestanding claim of actual innocence. Here, the district court erred for two reasons. First, freestanding actual innocence is not a basis for federal habeas corpus relief, especially in a non-capital case. And second — Just a minute. Stop right there. Where did he get that? Can you cite a case that says that? Yes, Your Honor. Well, I can cite cases that say — there are no cases that hold that there is a claim for actual innocence, freestanding actual innocence in habeas corpus. The United States Supreme Court in Herrera assumed without deciding that it would be an Eighth Amendment violation to execute a factually innocent person, and they continued that assumption in House v. Bell. But no court has ever held that such a claim for relief exists in federal habeas. Has the Court ever held that there isn't? The United States Supreme Court has never held that there is not a claim for actual innocence, although — So when you say — you start out by saying there's no actual innocence ground for relief in a non-capital case. Don't you mean to say that's an open question? Sorry. I think, yes, to the extent the United States Supreme Court has never clearly foreclosed it, I — What does the Ninth Circuit say? The Ninth Circuit, the case most on point is Carragher, and there this Court also assumed without deciding that a freestanding claim was available. But in that case, it determined that Mr. Carragher had not proven what he needed to. Why would they make that assumption if the law says there's no such claim, as you claim? Well, I think in Carragher and in all of the cases where the Court — where this Court and the United States Supreme Court have been willing to make that assumption, it was because they didn't need to answer that question, because the evidence was not anywhere close to meeting the burden that Petitioner bears. But the Court in those cases went to the merits. The Court assumed without deciding that it could get to the merits. And I — so, yes, I mean, they reached the merits. They concluded that the Petitioner had not proven that he was actually innocent for the purpose of granting relief. If we went — I'm sorry, go ahead. Well, if we went to the merits, you think Judge Jones was mistaken? Yes, Your Honor, and I'll turn to that point right now. So even assuming that a freestanding claim for actual innocence exists, both this Court and the United States Supreme Court have held that Petitioner bears an extraordinarily high burden of establishing his actual innocence. This is higher than a schlup burden to prove a gateway claim for actual innocence. The Petitioner has to prove that in the totality of the evidence, both old and new evidence, Petitioner has to establish that he is actually innocent. In other words, the record as a whole must permit only one reasonable conclusion, that the Petitioner did not commit the crime. That's an extraordinarily high burden. No court has ever found — no appellate court, excuse me, has ever found that any Petitioner has ever met that burden. And especially when this Court compares this to the facts in Carragher and in House v. Bell and in Herrera, it's clear that the evidence, Petitioner's new evidence in this case, doesn't come anywhere close to the evidence that this Court rejected in Carragher that the United States Supreme Court rejected in House and in Herrera for a freestanding factual innocence claim. What we have here is at its base recantation evidence. The victim and Petitioner's father and the victim's father testified that their testimony during the State court trial was not accurate. Petitioner's father directly testified that he lied in the State court proceedings. The victim testified that she didn't fully understand what she was saying in the State court proceedings. Although Petitioner attempts to dress this up as something else, this is at its base recantation evidence. Kagan. Can I interrupt you for a moment in just turning you back a little bit to the procedural issues about how this is before us? Now, you explain that Mr. Jones didn't exhaust this claim before the State court. Is the State expressly waiving exhaustion because EDPA tells us that the State won't be deemed to have waived exhaustion unless it expressly waives that requirement? In Oregon State court, there is no freestanding claim for actual innocence. And so the position that we have taken in the District court and in this court is that Petitioner did not need to exhaust this claim. So the District court said that without a citation, and the only thing I saw on point was Anderson v. Gladden, which said the question was open. So what is it in Oregon State court that says there is no freestanding claim of actual innocence? Is there a case on point? I am not aware of a case on point, Your Honor. And I'm sorry, I don't have a more direct answer for you than that. Okay. But your, the State's position is that this claim is technically exhausted and procedurally barred. Is that correct? Because there is no claim in Oregon State court. So if he raised the claim, so he didn't fairly exhaust it, he didn't fairly present it, it's not exhausted that way. But if he did go back to State court, the State's position is it would be procedurally barred because there is no such claim. Is that correct? That is correct. Okay. And so do we have to find that there is cause and prejudice, or are you as well as actual innocence in order to reach that claim? Or how does that, how do we get to it? I think, I'm not sure if this Court needs to find cause and prejudice. I think because the State does not recognize a freestanding claim for actual innocence, Petitioner could not have brought this claim in State court. And so he can bring it for the first time in Federal court. In other words, there's, your position is there's no exhaustion requirement on this claim? On this particular claim, yes. And so I want to, if I've answered the Court's questions on that point as best I can, I'd like to specifically talk about what the standard is in this case, what Petitioner must prove. To prove a Schlup claim, it's pretty clear that the Court evaluates the new evidence, all of the evidence, through the lens of what a rational juror would decide, how a rational juror would view the new evidence. Petitioner seems to suggest that that is not the standard when looking at it for a freestanding actual innocence claim. But both this Court and the United States Supreme Court have made clear that a freestanding claim, the burden is much higher than it is to prove a Schlup claim. If Petitioner's argument is correct, then this Court would ultimately have to defer to most of the district court's conclusions on this, which we know from House v. Bell and from Herrera that an appellate court doesn't do. It's the question before this Court is a legal one that this Court reviews de novo. Has Petitioner put on enough evidence to establish that he is actually innocent? As I noted ---- Well, Mr. Smith, what about, you know, Judge Jones made a lot of findings. Do we, you know, review those under, like, a higher standard? Like, for instance, I think you really found that the victim was being truthful at, you know, at the hearing he held, right? Right. To the extent that there are disputed issues of fact that the district court made factual findings on, this Court reviews those evidence for clear error. However, if this Court looks to what the United States Supreme Court did in House v. Bell, it's clear that there aren't very many disputed issues of material fact in a case like this. It's not this Court's job to determine what factually happened 15 years ago in Petitioner's bedroom. That's the job of a jury. But isn't it disputed ---- well, maybe you don't think it's a question. Isn't it disputed whether the victim was telling the truth at the State court trial or telling the truth when she testified at the habeas case? I don't think that's a disputed issue of fact. The question is, how would a rational juror, when looking at what the victim said 15 years ago and how the victim is testifying now, how would a rational juror look at that? When you look at House v. Bell there, the district court in that case found the Petitioner not credible. It found two of the State's witnesses explicitly credible. Yet, the United States Supreme Court essentially said those credibility determinations were not important. What its job was to do, and this is in the context of a Schlutt claim, to be sure, but its job was to evaluate, to make a probabilistic determination about what a reasonable juror would do with all of this evidence here. And so I don't think, to the extent that the district court made factual findings, I don't think they are factual findings on material issues. Unless this Court has any other questions right now, I'd like to reserve the rest of my time for rebuttal. May I please the Court. My name is Ellen Kitcher. I represent Petitioner Scott Jones in this proceeding. This is an extraordinary case where a jurist with more than 50 years of experience in the State and Federal courts at both trial and appellate levels sat across a conference table while the evidence in this case was being adduced from the witnesses. After hearing from all of the witnesses in this case, he concluded that Mr. Jones was actually innocent of the charges of which he had been convicted. This case is extraordinary because, although the government has put the rubric of recantation on the main evidence before the trial and the habeas court, this is not truly a recantation in the terms that we ordinarily see this in court. The complaining witness at the trial, a 13-year-old girl who, by all accounts, both before and after the trial, was extremely naive about her body, the parts of her body and what had happened to her, told the truth as best she knew it. And that truth came from the government's own agents when they interviewed her, as Judge Jones specifically found. Those agents put in the mouth of that 13-year-old girl the words that she used when she testified. It wasn't until many years later, when she herself came to understand her body, that she realized that the actual import of what she had said was incorrect totally. That those things had never happened to her. And she came forward by herself to her family to tell them that she realized that she had done something that had resulted in a terrible injustice to her brother. Let me ask you a couple of things. One was, the father and the sister did seem to recant what they said. They said, here is what the defendant told me, and then they said, oh, no, I misremembered it, it was in a different context. So that does seem like recantation evidence. When it comes to the victim, the thing that concerned me was that the issue of her anatomical knowledge was at issue during the trial. And that seemed to be the main theory of defense, and yet the jury rejected it. So I guess the question is, looking at all the evidence from trial and the new evidence of her testimony, which is different now, why does that meet the high barrier for no reasonable juror could have convicted him, or any reasonable juror would think he was innocent? Well, I think I should say at the outset that I'm not sure that's the standard. Although I do believe the standard that's set forth in both Carragher and Justice Blackman's opinion is higher than looking at whether a reasonable juror would find reasonable doubt. I think that the standard is whether Mr. Jones is probably innocent of those charges. And the cases talk about affirmative evidence of innocence. So what this new testimony brings before the Court is that the complaining witness herself is saying, although I may have said at the trial initially that my vagina was penetrated, that's not what happened. Now I can tell you- Well, the problem is, though, you see, I mean, ten years later, how can, you know, it's hard for me to understand that you can be certain ten years later what happened when she was eight years old. You know, she did say, make statements at that time that indicated some understanding as to what went on, you know, was subjective. She said things like she used the word inside. She put his fingers inside. If she didn't know she had an inside, why would she say he went inside? I'm just talking about questions jurors could raise. She said he wiggled his fingers inside of me. Now, why would she say that? She didn't know, you know, until ten years later she had an inside. I mean, to me, one way of looking at this is, well, certainly what an 18 or 20-year-old remembers, what happened to him or her when that person was eight years old is going to be a different memory than what happened at the time. And as Judge Ikuda said, this was all an issue at the trial, right? You know, people knew the witness was an eight-year-old. And she had, you know, just a very, I would say, sketchy understanding of her own anatomy. So aren't these things that the jury considered the first time around? They did, Your Honor. But what they didn't have in front of her was a woman who finally understood what inside meant. She testified at the evidentiary hearing and explained to Judge Jones, as I indicated, sitting right across the conference table from him, that she now realized that this was inside the folds of her labia, to be graphic about it, not inside. Well, but you see, but she's making a judgment there as to exactly what happened 10 or 12 years ago. She, you know, maybe that's a recollection now, but maybe it was not a recollection 10 years earlier. And especially if you take it in connection with, you know, what is the definition of penetration? However slight. You know, that could, I mean, the jury could say, well, you know, it's probably enough to constitute penetration. In other words, you know, I don't see how this is really the kind of recantation that, I forgot the standard your opponent used, that meets the high standard of showing actual innocence. It does cast doubt. I have no doubt about that. I think we have to go back to what you were asking my opponent earlier about deferring to the judge's factual findings. And the judge found that she was entirely credible when she said that she had that her vagina had not been penetrated. This was an explicit evaluation of what her anatomy was. She had a diagram in front of her. And she was able to testify about the fact that at the time she testified as a 13-year-old girl, she did not know that she even had an internal space. And therefore, she could never have testified that that would have been penetrated. Rather that she had, she realized now that her labial folds were penetrated, not even penetrated really. That his fingers went inside those folds, which is a very different part of the genital anatomy, as is clear from the diagram. I think that there were other things that also, and you're right, that some of these things were discussed at the trial, but were not thoroughly, I think, examined the way Judge Jones did. That is clear from looking at the videotaped interviews of her prior to the trial, and frankly, the day before the grand jury hearing, that she did not understand at all what her vagina was. That she was still taking at face value what she was being told, that it was the whole area down there. And therefore, although that wasn't that clear to the jury, it was very clear to Judge Jones that she did not have the understanding that she currently had. I think that that combined with the other facts that were before the judge, including the recantation of her father as to the evidence, would have made a powerful difference if this case had been held with the evidence that we now have. Both that she would have testified unequivocally that this did not happen, and her father would have testified that no statement. Well, actually, I don't know that they would have asked him, because his statement would have been that he just said, I admit to the whole thing, and that he said nothing about penetration. So I think based on those facts, and I would take issue with what the State says, that somehow those are not material facts and you can just disregard them because that doesn't really go to the meat of the matter here. The meat of the matter here is whether Mr. Jones is probably innocent of the charge that he was convicted of, and the complaining witness clearly is testifying credibly, according to the district judge, that he was not. So that's where we think that the credibility determinations, although this is still a legal conclusion you have to reach, but those credibility findings by the district judge clearly tell you that Mr. Jones is probably innocent of these charges. That's the standard that's been articulated in Carragher and obviously the standard of this Court. Going back to my earlier procedural question, are you aware of an Oregon Supreme Court case or any Oregon cases saying that the State court will not entertain a claim of actual innocence? I am not, Your Honor. Okay. So why is it that everyone is agreeing that Oregon won't entertain this claim if you're not aware, if neither of you are aware of any case on point? Well, I think it's just it's not a question that's been raised. And so the evidence that came forward, came forward once Mr. Jones had already actually filed his petition in Federal court for habeas relief, and so we brought the claim here. I wanted to address the argument about whether there is such relief available in a noncapital case. Obviously, that is an open question. There are a number of cases that have indicated that incarcerating an innocent person is just as egregious an Eighth Amendment harm as executing one, but there is no case directly on point applying that to the Herrera finding for freestanding innocence. But Judge – and Judge Jones said in his opinion that he assumed that such relief was available. I don't – if this Court were to find that that relief is not available, I think it would be appropriate to send this case back to him for reconsideration of the claims that could have been held under the Schlepp v. Deleux case. There are two claims that he did not write an opinion on. He did not make any factual findings, and I think that if he assumed that a freestanding claim would be granted, that's one thing. But if he were to know that this Court would not entertain that in a noncapital case, I think he would take a more careful look at those claims, because obviously Mr. Jones, he met – Kennedy Can you just tell me, just briefly, what those claims are? There was a prosecutorial misconduct claim and a Brady claim. And he indicated in his opinion that he was assuming that relief was available in a noncapital case. We certainly assert that it is, but if this Court were to find otherwise, we wouldn't want Judge Jones to be able to address those claims more, particularly. One of the things that the State brought up in its brief that didn't argue in its opening argument, and I don't know if the Court has questions about this, relates to the underlying State law and whether the conviction for the unlawful penetration actually required penetration of the vagina, and whether State court precedents made that clear. Our position is certainly that it's very clear, and it was clear to the judge who tried the case in 2003. He instructed the jury specifically, and I don't know if this is actually in the record but in page 642 of the trial transcript, he specifically instructed the jury that in order for Mr. Jones to be found guilty in this case, the jury would have to find that there had been penetration of the vagina. And the government tried to argue in front of Judge Jones that that meant more generally just the areas in the genitals, but I don't think there's any support for that argument either in the law or in the jury instructions that were given or in the – since the statute itself doesn't define the term vagina, it's very clear under both State and Federal law that the common meaning of the word applies, and we all know that that means the vagina. It doesn't mean other parts, and the judge was quite clear about that on the record. I think I've addressed the arguments of my opponent, but does the Court have any other questions? No, I don't. Now it doesn't appear to be. In conclusion, I would just like to say – actually, there was one other thing that the Court – the State did argument concerning the father's recantation. They tried to explain a motive for why he would have lied in this proceeding as opposed to in the trial, and they said that this would have to do with his religious beliefs, that his daughter's purity in the eyes of God had somehow been besmirched by what he said. He described it as having damaged goods, perhaps. Exactly. But this was a part of his religious faith, and I think it would be illogical to argue that simply changing your testimony would change the facts before your God. Clearly, he – him just simply saying that it hadn't happened wouldn't have restored your purity. So I think that's an illogical argument, and I don't think that it should be argued. No, I mean, I don't want to, you know, argue about it, but, you know, people's attitudes and concepts about their own religion change over time. Right. Well, his didn't change what he understood were the facts. So I'm saying they do change. We don't know whether his did or not. That did not appear to be the case when he testified in front of Judge Jones. Maybe for some reason he became a more forgiving person. I don't know. Well, Judge Jones found that his testimony was credible, and I think that's the important thing there. So in closing, we would just simply like to say that although this is an extraordinary remedy that we are asking for, this was an extraordinary case. I don't think in the more than 30 years that I practice law I've seen a case with exactly these facts where testimony of the complaining witness was based on total misunderstanding of her anatomy, which was brought about by the people who had interviewed her and prepared her for trial. Thank you. Roberts. May it please the Court. I'd just like to respond to as many of the points brought by counsel as possible. Counsel suggests that if this Court concludes there is no freestanding claim, the appropriate remedy is to send it back to the district court for evaluation of the other claims. That's not necessary here. The district court evaluated all of the other claims and rejected them on their merits. Regarding counsel's last point about what the victim's and her father's motivations were, although it may be true that in counsel's mind that motivation to change the testimony is illogical, that's not really the question here. The question is how would a rational juror have viewed it? And that leads to the next point, which is, is this really a question that we look at and the district court just gets to determine, based upon all this evidence, I would find Mr. Jones not guilty? No. The question for the district court is a much higher one. The district court must conclude that when rational jurors looked at all of this evidence, old and new, that there was only one reasonable outcome, and that is a not to change her testimony. And we don't have that in this case. The district court explicitly stated that it was unable to evaluate what extent the father's and the sister exerted influence on the victim to change her testimony in this case. Therefore, to the extent that the district court's credibility determinations matter, we do contend that they are clearly erroneous, because the district court itself concluded that it couldn't evaluate, it couldn't fully weigh the credibility of the victim's testimony. Moreover, although the victim's testimony now explains some of the recantation and some of the differences from her State court testimony, as we note in the briefs, it doesn't explain all of the changes in her State court testimony. In State court, the victim specifically testified that she saw the Petitioner's penis into her vagina. In district court, the victim now testifies that that never happened, and she has no explanation for why she says what she did to the State court. So a juror hearing this new evidence would also understand that it wasn't just about the victim now understanding her body better. She's changing her story. That is why Federal courts should view recantation testimony with extreme suspicion. And the district court did not do that in this case. Let me – I have to go back one more time to my procedural question. So since we don't know whether the Oregon State court would entertain a claim of actual innocence, neither of you are aware of a case that would bar that, there's at least – it will at least appear on its face that she hasn't – that the defendant has not exhausted that issue. So my question is, does the State waive that exhaustion requirement so that we can consider the cases you've presented it to us? I think we have effectively done so in this case by not asserting an exhaustion requirement in district court. Okay. So B-3 says, unless the State through counsel expressly waives the requirement. So are you expressly waiving the requirement of exhaustion? Yes, I can think we have done so and I am doing so here. Appreciate it. But that relates to one more issue of State law which is discussed in the briefs here, and that is that there is no State court holding that even what Petitioner admits now that he did would not constitute unlawful sexual penetration in this case. That's to demonstrate that this really is a question of State law. The State court jury had all of this information before it. The State court jury heard the arguments the Petitioner is now making. They rejected them and found him guilty of three counts of unlawful sexual penetration. Petitioner has not met his extraordinarily high burden of proving his actual innocence, and we ask this Court to reverse the district court's judgment otherwise. I know this time is up. Can I ask one question? You just reminded me of something else which I thought of going through these papers. It seems to me if this issue had been brought up much earlier at some point, you know, the State might have included it. I don't know if it's a lesser crime, but included attempted penetration as an alternate charge. I mean, would that be precluded now, or is that something, you know, we should consider, or what? Yes, Your Honor, that would be precluded now, and that's yet another reason why the Federal court shouldn't be evaluating these claims now. Had Petitioner made any type of argument like this in the State court, had he argued to the Oregon Court of Appeals that there was insufficient evidence to convict him of unlawful sexual penetration because he only penetrated the victim's labia, the injury of attempted unlawful sexual penetration. But that time has passed, right, to bring that charge? Yes. All right. Thank you. Thank you. Are there any other questions? Thank you. The case of Jones v. Frankie is submitted.
judges: Alarcon, Tashima, Ikuta